**MILLER et al. v. LANG et al.**

No. 6288.

Court of Civil Appeals of Texas. Amarillo.
April 27, 1953.

Nelson, Montgomery, Robertson & Sellers, Wichita Falls, for appellants.

Benson & Howard, Lubbock, for appellees.

PITTS, Chief Justice.

This is an appeal from a judgment denying specific performance of a contract. Appellants, L. F. Miller and F. D. Miller, a partnership known as Miller & Miller Motor Freight Lines, sued appellees, C. M. Lang and C. R. Givens, a partnership known as Lang Transit Company, for specific performance of a contract in which it is alleged that appellees agreed to lease, with a renewal option or sale, to appellants a certificate of convenience and necessity issued to appellees by the Interstate Commerce Commission and a certificate of convenience and necessity issued to appellees by the Corporation Commission of the State of New Mexico authorizing the transportation of commodities as therein expressed between Lubbock, Texas and Fort Sumner, New Mexico. The case was tried to the court without a jury and judgment was rendered denying appellants any recovery from which they appealed.

The contract in question was entered into subject to the approval of the Interstate Commerce Commission. The controlling issue to be here determined is whether or not the trial court was justified in finding and concluding that the contract as amended by the parties was not approved by the Interstate Commerce Commission

as the same was agreed upon by the parties.

The original lease contract was executed by the parties on June 28, 1949, for a valuable consideration and for a term of two years with an option given appellants to renew the same for an additional term of two years, or to purchase the same for a cash consideration of $5,000. Upon submission of the contract to the Interstate Commerce Commission for approval, the said Commission, in a very lengthy statement of findings and conclusions, declined on January 26, 1950, to approve the contract as drawn. But the said Commission indicated therein that it would approve a contract between the parties for a term not to exceed one year from the date of March 8, 1950, provided the terms of the same conform in other respects to the Commission's findings therein expressed and provided further that such authority therein given would be exercised by the parties within a period of 180 days.

On February 8, 1950, the parties, in an effort to meet the requirements of the said Commission, entered into an amended lease contract authorizing appellants to operate under the said certificates for a period of one year from the date of March 8, 1950, for a valuable consideration of $3,000, with the privilege of purchasing the said certificates at the expiration of one year for a consideration of $8,000. The parties likewise therein agreed to submit the amended contract to the said Commission for its approval. However, it should be here observed that appellees then held a corresponding Texas intrastate certificate of public convenience and necessity issued to them by the Texas Railroad Commission, authorizing the transportation of general commodities between Lubbock, Texas and the Texas-New Mexico state line at Farwell, Texas, and all intermediate points over U. S. Highway No. 87, but the corresponding certificate was not involved in the contract or the amended contract between the parties. Under and by virtue of section 206(a) of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 306(a), appellees, being the owners of the said certificate, which does not authorize the crossing of a state line, would be authorized to register their said certificate with the Interstate Commerce Commission and thereby be authorized under the Federal laws to engage in the transportation of general commodities in interstate commerce between Lubbock, Texas and Farwell, Texas, and all intermediate points. This appellees intended to do. As evidence of appellants' acquiescence in these matters, we find in the record a letter written by appellants to appellees of date February 13, 1950, after the amended contract had been executed by the parties but before it had been submitted to the Interstate Commerce Commission for its consideration, saying in part:

"In connection with the amended contract dated February 8th, 1950, which we made in an attempt to comply with the order of the Interstate Commerce Commission in Docket No. MC–F–3416, it is the understanding of both of us that the law gives you the authority to register with the Interstate Commerce Commission your Certificate of Convenience and Necessity issued by the Railroad Commission of the State of Texas, and by registering this Certificate that it will give you authority to handle Interstate Commerce under your Texas authority."

The parties thereafter jointly submitted an amended application, together with their amended contract but without including the letter mentioned above, for the consideration of the said Commission.

On March 27, 1950, the said Commission in another long dessertation of discussions, findings and conclusions, compiled in what it denominated its "Supplemental Report", "approved" the amended contract "subject to the terms and conditions set out in the findings in said report", provided, among other conditions, that the authority therein granted be exercised by the parties within 180 days from the date thereof, the same being March 27, 1950.

Some of the "terms and conditions" required by the Interstate Commerce Commission, as set out in its report and order, were not in harmony with the terms of the

contract and amended contract executed by the parties but they were in contravention thereof and in addition thereto, as is evidenced by that part of the letter previously herein copied. For this reason appellees' counsel wrote to appellants' counsel on April 4, 1950, advising that he had on that day received a copy of the Commission's order and because of such additional requirements made by the Commission the consummation of the transaction was foreclosed and the Commission should be notified that because of its requirements the transaction would not be consummated. Receipt of the said letter was acknowledged by counsel for appellants in a reply of date April 7, 1950, in which reply counsel for appellants took issue with counsel for appellees and urged that the amended contract be consummated.

To appellees one of the most serious objectionable conditions or terms required by the Commission to be added to and included in the contract between the parties was that requirement made by the Commission to the effect that appellees could not engage in any operations in interstate or foreign commerce over the route between Lubbock, Texas, and the Texas-New Mexico state line at Farwell, Texas, thus depriving appellees, in effect, of any valuable use of their corresponding Texas intrastate certificate of public convenience and necessity issued to them by the Texas Railroad Commission and certainly depriving appellees at any rate of any profitable use of the same. The contract under consideration is for a term of one year. In considering the difference of the value of the said route with the right of interstate commerce and without such we find that the evidence reveals that the right to operate over such route with the right of interstate commerce would be worth $20,-000 to $25,000 and the trial court found such a value would at least exceed $10,000, while the evidence reveals that the right to operate over such route in intrastate commerce only would not be worth more than $3,000. Such a measure or requirement as was here imposed by the Commission was not contemplated by the parties in any part of their contract, as is clearly shown by the evidence and it is particularly shown by that part of appellants' letter heretofore referred to and copied in part.

Under the terms of the agreement between the parties as well as the law governing such transfers, the contract could not be consummated and become effective until it was approved by the Interstate Commerce Commission. The said Commission did not approve the amended contract as made by the parties themselves but it imposed a condition precedent not contemplated by the parties and one contrary to and in contravention of the terms of the agreement made by the parties, since said condition would require appellees to give up a valuable right that would change the consideration agreed upon by the parties. The Commission approved the amended contract only upon the condition that such additional terms as the Commission itself urged be included in and made a part of the amended contract, thus requiring the execution of another revised contract between the parties.

This same matter was twice thereafter before the Interstate Commerce Commission for consideration with a result that no change was made by the Commission with reference to its previous requirements to the effect that appellees must discontinue all operations in interstate or foreign commerce over the route between Lubbock, Texas and Farwell, Texas, if the contract in question was to be approved by the said Commission. On September 6, 1951, the matter was presented to the Commission upon a motion of appellees alone, attaching thereto a copy of the letter of date February 13, 1950, received from appellants showing they were willing for appellees to continue the use of the Lubbock-Farwell route for interstate commerce. In another lengthy discourse the Commission recognized the fact that the contents of appellants' said letter reveals that they intended for appellees to continue the use of the Lubbock-Farwell route for interstate commerce. Nevertheless the Commission continued to impose the condition precedent that such use must not be available to appellees if the contract be approved by it. Thereafter on April 25, 1952, the

matter was again considered by the Commission upon a motion filed by appellants urging that unless the transaction be "approved exactly as described in the amended contract, appellees may be able to defeat the action for specific performance then pending". However, the Commission steadfastly refused to make any change in their former requirement.

■ It is a fundamental rule of law that courts cannot write contracts between parties but can only pass on the terms as such are made by the parties themselves. In the case at bar the agreement between the parties did not and could not become a valid and binding contract until it had the approval of the Interstate Commerce Commission. The said Commission declined to approve it as found but it required other terms and conditions, and at least the condition precedent heretofore discussed, which had not been contemplated by the parties themselves. The minds of the parties had not therefore met and approved the terms required by the Commission, and in fact the minds of the parties did not thereafter meet and approve the conditions and terms required by the Commission. If the minds of the parties had met at all on the matters required by the Commission, they had reached an agreement contrary to the requirement made by the Commission. It is our opinion that the trial court properly found and concluded that the contract as amended by the parties was not approved by the Interstate Commerce Commission as agreed to by the parties and that the same is no more than a purported contract that cannot be specifically enforced by the courts.

The trial court likewise found, in effect, that the requirement of the Interstate Commerce Commission, if enforced, would result in an undue hardship to appellees which was not contemplated by the parties, making appellees' certificate of convenience and necessity issued to them by the Texas Railroad Commission authorizing operations between Lubbock and Farwell practically worthless. This finding is supported by the evidence to the effect that appellants would realize only a total of $11,000 ($3,000 for first year lease and $8,000 for its sale thereafter) under the terms of the agreement made by the parties whereas the value of the Lubbock-Farwell route, which was not considered as a part of the agreement, was worth not more than $3,000 without interstate commerce rights (as required by the Commission) while its value was fixed at more than $10,000 by the trial court if interstate commerce rights were permitted by the Commission as contemplated by the parties, and there was undisputed evidence to the effect that in such event it would be worth $20,000 to $25,000. It therefore appears that appellees would either sustain considerable loss, or at most could not earn any substantial profits, in case the required provisions of the Interstate Commerce Commission be inserted in the amended contract of the parties and enforced. The trial court concluded that because of such undue hardship to appellees, if the contract be enforced against them as required by the Commission, the said court, in the exercise of its discretionary powers, should not grant a decree of specific performance.

■ One of the leading cases in Texas on the denial of specific performance on the grounds of unfairness and hardship is that of Bergstedt v. Bender, 222 S.W. 547, by the Commission of Appeals. There the court held that a decree for specific performance of a contract is not a matter of right, but rests in the sound discretion of the trial court, which discretion is not arbitrary, but judicial, and must be exercised according to the established doctrine and principles of equity. The same rules were applied in the case of Fisher v. Wilson, Tex.Civ.App., 185 S.W.2d 186, affirmed 144 Tex. 53, 188 S.W.2d 150. These rules are supported by 38 Tex.Jur. 661, Sec. 14; pages 664–666, Sec. 16; page 671, Sec. 20; page 782, Sec. 93, and the many other authorities there cited.

■ Under these authorities and the evidence presented, it is our opinion that the trial court was justified in concluding that it should not exercise its discretionary powers in support of a judgment for specific performance. Such is particularly true in the case at bar wherein the parties to the contract had not agreed upon the terms

that would have imposed the hardship upon appellees.

■ Appellants complain about the introduction of two letters that passed between the attorneys for the respective parties concerning the subject matter here involved. It must be presumed that the trial court did not consider any improper evidence, if such was admitted, unless the contrary is shown. We find no reversible error as a result of the introduction of the letters. In fact, appellants themselves introduced a part of one of the said letters.

For all of the reasons heretofore given, it is our opinion that all of appellants' points of error should be overruled and the judgment of the trial court affirmed.